IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CHAD KALAHER, | ) |
| Plaintiff, | ) |
| v. | ) No.14-cv-1208 |
| CROP PRODUCT SERVICES, | ) |
| Defendant, | ) |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE :

This matter comes before the Court on Plaintiff Chad Kalaher's Motion to Compel Discovery Compliance (d/e 18). For the reasons set forth below, the Motion is ALLOWED in part and DENIED in part.

## BACKGROUND

Kalaher worked for Defendant Crop Product Services (CPS) from May 25, 2011, until January 9, 2014. Defendant's Opposition to Plaintiff's Motion to Compel Discovery Compliance (d/e 21) (Opposition),at 1. In 2013, Kalaher worked for CPS as a Division Seed Marketing Manager for CPS's Eastern Illinois Division (Division). CPS established a 2013 Incentive Compensation Plan for managers such as Kalaher. Kalaher executed a document entitled "Crop Production Services 2013 Incentive

Compensation Plan for Division Managers & Division Administrative Personnel" (Plan).  <u>Notice of Removal</u>, Exhibit A <u>Complaint</u>, Exhibit 1 <u>Plan</u>.  The Plan set forth the process by which a pool of money (Pool) would be divided among management personnel in the Division based on the Division's performance in the calendar year 2013.  The Pool was determined by the following formula:

Pool = Base Incentive  +  Incentive Rate x (Actual Division Net Income Before Taxes  –  Target Division Net Income Before Taxes).

<u>Plan</u>, § V.  That Plan provided, "The bonus pool will be allocated to the Participants based on an assignment of a range of shares for each eligible position.  See Exhibit A for the share assignments." <u>Plan</u>, § V.

The attached Exhibit A to the Plan was entitled "Participant Information" and was signed by Kalaher.  The Participant Information document stated that the Base Incentive was $35,000; the Incentive Rate was 1.75% and the Target Net Income Before Taxes was "16% of the Average Investment of the Division in 2013."  The Participant Information document also stated,  "Shares: _____."  The blank next to the word "Shares" was left blank.

The Plan stated that, "The entire Incentive Compensation Award will be distributed to each eligible employee after the Division financial

performance has been determined. This will occur on or before March 15, 2014." Plan, § VI. CPS terminated Kalaher on January 9, 2014. He did not receive any Incentive Compensation Award under the Plan.

Kalaher brought this action in state court. He asserted a claim for unpaid wages under the Illinois Wage Payment and Collections Act (Act), 820 ILCS 115/1 et seq., and a claim for breach of contract. CPS removed this action to the Court based on diversity removal jurisdiction. Notice of Removal, at 1-2.

Kalaher served CPS with a request for documents and a set of interrogatories. CPS responded. Defendant's Opposition to Plaintiff's Motion to Compel Discovery Compliance (d/e 21) (Opposition), Exhibit C, Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories (Interrogatory Answers); and Exhibit D, Defendant's Objections and Responses to Plaintiff's First Request for Production of Documents (Production Response). The parties met and conferred regarding the responses, but could not resolve their dispute regarding CPS's responses Document Requests Nos. 9, 10, 11, 21, and 28; and Interrogatories Nos. 3 and 12. Kalaher brings this Motion to compel more complete responses to these discovery requests. The Court addresses the disputed discovery requests below.

Document Requests Nos. 9, 10, 11, and 28

These requests asked for the following documents:

9. Any and all documentation related to the 2013 Incentive Compensation Plan for Division Marketing Managers for 2013.

10. Any and all documentation related to the 2012 Incentive Compensation Plan for Division Marketing Mangers for 2012.

11. Any and all documentation related to the 2011 Incentive Compensation Plan for Division Marketing Mangers for 2011.

28. Any and all supporting documents to the document titled "Crop Production Services 2013 Incentive Compensation Plan for Division Marketing Managers and Division Administrative Personnel."

Motion, ¶ 2.  Kalaher states that CPS responded to these requests by producing the Plan and similar plans for 2011 and 2012, and documents regarding the calculation of the Pool for 2013 and for similar pools of money for 2011 and 2012.  Motion, ¶ 3.  According to CPS, it produced the Plan documents for 2011 through 2013 and spreadsheets showing bonus payments to the Division personnel for 2011-2013.  Opposition, at 4.

Kalaher seeks documents that relate to the calculation of the allocation of the shares for each of these years and the distribution of the pool to each recipient.  CPS states that no documents exist.  CPS states that the Division General Manager Kevin Foreman "had the discretion to award shares of the division bonus pool as he deemed appropriate among

the division personnel whom he deemed eligible." Opposition, at 5. If Foreman, through the exercise of his discretion, allocated shares and decided the amount to be distributed from the Pool to each Participant for each share, he still may have generated one or more documents that reflect or relate to that exercise of discretion. The Court directs CPS to review its files, and in particular to review Foreman's files, to determine whether any such documents exist, and to produce them. If no such documents exist, CPS is directed to supplement its Production Response with a certification that no such documents exist.

CPS also objects that documents related to the 2011 and 2012 calendar years are not relevant because the Plan only covered 2013. The relevance standard for discovery is quite broad. Information is relevant if the information "appears reasonably calculated to lead to the discovery of admissible evidence." Under that broad standard, the information sought from 2011 and 2012 appears reasonably calculated to lead to the discovery of admissible evidence in this case. If, for example, the Court should determine that the Plan is an enforceable contract and that the Plan is ambiguous with respect to the allocation of shares, then information regarding the course of dealing or prior practices of the parties might be

relevant to ascertain the intent of the parties.[1] See e.g., Sethness—Greenleaf, Inc., v. Green River Corp., 65 F.3d 64, 67 (7th Cir. 1995) (interpreting Illinois law). Information from prior years could, thus, be relevant for purposes of discovery. CPS's relevancy objection is overruled. CPS is directed to produce the documents or the certification as set forth above.

Document Request No. 21

Document Request No. 21 asked for the following documents:

> 21. All documentation relied upon by Kent McDaniel when preparing the Affidavit filed with the federal court dated May 29, 2014.

Motion, ¶ 4. CPS responded as follows:

> In addition to the General Objections incorporated herein, CPS objects to this request as seeking information that is protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

Production Response, at 10. During the parties' efforts to resolve this discovery dispute, counsel for CPS subsequently informed Kalaher's counsel that all known relevant non-privileged responsive documents were produced, and identified the responsive documents by Bates Stamp

---

[1] The enforceability or construction of the Plan is not before the Court at this time, and the Court makes no findings regarding any such issues.

numbers.  Opposition, Exhibit B, Letter dated December 30, 2014, at 2.

Kalaher asks the Court to compel an additional response.

This Court will not compel the production of privileged documents at this juncture.  CPS, however, must produce a privilege log so that Kalaher can evaluate the claims of privilege and challenge privilege claims he believes to be improper.  Fed. R. Civ. P. 26(b)(5)(A).  CPS is directed to produce a privilege log in accordance with the requirements of Rule 26(b)(5)(A) for any information withheld under a claim of privilege.

Interrogatory No. 3

Interrogatory No. 3 asked for the following information:

3. State specifically the incentive monies Plaintiff would have been paid for the year 2013 had he remained employed at Defendant Company after the year 2013.

Motion, ¶ 5.  CPS objected to this Interrogatory because "it is a hypothetical question that asks CPS to speculate the amount of incentive compensation Plaintiff 'would have been paid' for 2013." Interrogatory Answers, at 5.  The Court agrees with CPS.  The question calls for speculation.  Kalaher should reformulate the interrogatory to ask for factual information relevant to the issue or issues sought to be addressed by this interrogatory.  CPS's objection to Interrogatory No. 3 is sustained.

Interrogatory No. 12

> Interrogatory No. 12 asked for the following information:
>
> 12. Identify all division marketing managers and division administrative personnel who were denied payment under the annual incentive compensation plan throughout its existence and state specifically all reasons these individuals were denied compensation under the plan.

Motion, ¶ 5.  CPS objected to this interrogatory as follows:

> In addition to the General Objections incorporated herein, CPS objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly burdensome, and vague because it requests information from all CPS divisions and all incentive compensation plans available to division personnel, has no time restrictions, and seek "all reasons" for denying incentive compensation.

Interrogatory Answers, at 10.

The Court overrules CPS's objection to Interrogatory No. 12 in part. Information regarding the treatment of other similarly situated employees in other divisions may be relevant to construing any ambiguities in the Plan, in particular, the allocation of shares under the Plan.  The information about other divisions of CPS may also be relevant to determine whether Division General Manager Foreman actually had discretion to allocate shares, or whether his authority was limited by some company-wide policy or custom.[2]

---

[2] This observation is meant to be only an example.  The information may be relevant for other purposes also.

The interrogatory, however, is overbroad to the extent that it lacks of a time limitation and it is not limited to similarly situated employees. In this circumstance, the Court may enter an appropriate protective order to limit the scope of allowed discovery. Fed. R. Civ. P. 26(c)(1)(C) and 37(c)(5)(C). The Court, therefore, limits the timeframe to incentive compensation plans covering calendar years 2011, 2012, and 2013. The Court also limits the interrogatory to division managers who worked for CPS during any part of calendar years 2011, 2012, and 2013, but received no distribution from any incentive compensation plan. CPS shall identify all such individuals (other than Plaintiff Kalaher), and CPS "shall state specifically all reasons these individuals were denied compensation under the plan." Such a modified response should produce relevant information without imposing an undue burden on CPS.

THEREFORE, Plaintiff Chad Kalaher's Motion to Compel Discovery Compliance (d/e 18) is ALLOWED in part and DENIED in part. Defendant Crop Production Services is ordered to serve on Plaintiff Chad Kalaher the supplemental responses and privilege log directed in this Opinion by February 13, 2015.

ENTER: January 27, 2015

*s/ Tom Schanzle-Haskins*
UNITED STATES MAGISTRATE JUDGE